## UNITED STEELWORKERS OF AMERICA et al. v. BOMAR.
### Civ. No. 867.

District Court, M. D. Tennessee, Nashville Division.

March 10, 1948.

Jerome A. Cooper, of Birmingham, Ala. and R. H. Brazzell, of Nashville, Tenn., for plaintiffs.

Roy H. Beeler, Atty. Gen. State of Tennessee, and Robert T. Kennerly, Counselor Gen., State of Tennessee, F. A. Berry, W, E. Norvell, Jr., and Albert W. Stockell, Jr., all of Nashville, Tenn., for defendant Bomar.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiffs and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Finding of Fact.

1. The individual complainants are citizens of the United States and of the State of Tennessee and members of the United Steelworkers of America. The defendant Bomar is the Commissioner of Safety of the State of Tennessee and as such the executive head of the Tennessee Highway Patrol.

2. Plaintiff organizations and individuals have been on strike at The Nashville Corporation plant from November 10, 1947. The strike was still in progress when this Court denied the temporary injunction on January 19, 1948. During that time a substantial number of the regular employees of the plant have been on strike and were represented by the United Steelworkers of America and Local 4057 thereof; and several hundred persons have continued their employment at the plant, being represented by another union.

3. On the first day of the strike, November 10, 1947, the sheriff of Davidson County called defendant Bomar and requested his assistance and that of the highway patrol in keeping the peace in the vicinity of the plant of The Nashville Corporation and in keeping the roads serving the plant open to traffic. The sheriff of Davidson County advised defendant Bomar that his force of deputy sheriffs had been

unable to keep the roads serving the plant open for traffic and that there had been fighting and disorders at the plant gates during the first day of the strike and the gates and the roads serving the plant had been blocked by the strikers.

4. On November 10, 1947, the gates to The Nashville Corporation plant had been the scene of considerable violence as strikers and pickets blocked the plant gates by massing in front of them to prevent the entry of the plant employees who wished to go to work and had likewise blocked some of the roads to the plant. On that day there were a number of fights between the many strikers and workers at the plant gates.

5. That the same conditions found to have occurred on November 10, 1947, were repeated on November 11, 1947, which was the first day that the highway patrolmen under defendant Bomar went to the plant area to keep the highways serving the plant open, direct traffic thereon and to maintain peace and good order between the strikers and pickets and those desiring to work. There is no question but that the strikers would have prevented the workers going to work on this morning or any other morning during the strike if the highway patrol and other law enforcement officers had not been present.

6. On November 11, 1947, several fights between strikers and those attempting to go to work took place at one of the gates to the plant and a large number of persons from both the striking group and the working group were crowded together when one M. C. Weston, an organizer of the plaintiff steelworkers (and not an employee of The Nashville Corporation) came to this gate while defendant Bomar and the patrolmen under his direction were endeavoring to separate those fighting and to clear the way to the plant gates and was arrested by Bomar at the time he was saying: "Remember your PAC dollars next year and we will not have scenes like this." Weston was forthwith taken before the Sessions Court Judge and a warrant sworn out charging him with vagrancy; he was subsequently admitted to bail and upon trial he was found not guilty.

7. At the time Weston was arrested there were a lot of people milling around the plant gate where he was arrested, tempers were on edge, and the situation was so explosive that it could very easily have developed into a very serious threat to the peace and safety of the community, and Bomar, acting on the idea that Weston was attempting to stir up trouble, arrested Weston to get him away from the plant gate and keep down trouble.

8. Highway patrolmen have been present in the vicinity of The Nashville Corporation since November 11, 1947, each day when the shift goes to work in the morning and leaves work in the afternoon, and have been engaged in the direction of traffic on the three roads serving the plant, namely, the Donelson Road, the Vultee Boulevard, and the McGavock Road, and at the intersections of these roads with the connecting principal highways. Plaintiffs herein and their associates have picketed the plant daily during the strike. On at least two dates during this period (November 11 and December 15) when there were several hundred strikers and strike sympathizers present there have been as many as thirty-five patrolmen assigned to this duty; but on the other days when the strike activity was less, fewer patrolmen have been assigned to duty there, sometimes as few as three to five men. At times other than the shift changes highway patrolmen have seldom been stationed in the area.

9. The Donelson Pike, McCavock Road, and Vultee Boulevard which pass The Nashville Corporation plant are narrow, two lane roads which carry considerable traffic not connected with The Nashville Corporation plant. These roads provide cross connection between U. S. Route No. 41, a North and South route, and U. S. Route 70N, an East and West route. These roads likewise serve the U. S. War Assets Corporation office and sales warehouses where 400 employees of the United States government work, and city busses, rural busses, and school busses operate over them.

10. Strikers and pickets have on several occasions attempted to entirely block the passage of traffic on these roads by massing on them, and defendant Bomar, in the performance of his duty to keep the highways open, has required the strikers and

pickets to stand on one side of the road right of way off the paved portion of the highway, respondent testifying that strikers are now allowed to choose which side of the right of way they congregate upon. .

11. The strike has not been conducted entirely in a peaceful and lawful manner. There have been repeated breaches of the peace and unlawful acts which if not entirely attributable to the plaintiffs and their associates are clearly shown to be acts intended to be beneficial to the cause of the strikers. These unlawful acts include:

(a) Massing of pickets on the public highways and at the plant gates so as to block the passage of traffic,

(b) Fights between strikers or pickets and those attempting to work at the plant,

(c) Telephone cables serving the plant have been cut,

(d) Poles on power lines serving the plant have been sawed through and other poles blasted,

(e) An attempt to damage the electric substation serving the plant was thwarted when one Davenport, a striking employee of the plant and a member of the plaintiff unions was arrested there late at night with twenty-one sticks of dynamite, capped and fused for detonation,

(f) Large quantities of roofing nails have been scattered repeatedly on the roads leading to the plant and in the plant parking lot and many tires of workers' cars have been punctured thereby,

(g) Workers' cars en route to the plant have been stoned and workers have been threatened and insulted en route to the plant,

(h) Loud speakers have been operated by the strikers in the plant area broadcasting profane language,

(i) The railroad spur serving the plant has been greased so that railroad service to the plant has been partially interrupted,

(j) A sign has been erected by the strikers unlawfully over public highways.

12. Highway patrolmen, not in the presence of defendant Bomar, stopped the car of Raymond Campbell, a striker, and an associate of the plaintiffs, several miles from the plant of The Nashville Corporation and searched the car and the occupants thereof for weapons after a truck serving the plant had been shot into. No weapons were found and no arrests made. This search does not seem justified under the circumstances.

13. Several arrests are alleged in the bill of complaint to have been oppressive (Mrs. J. H. Jordan, John Walton, Haskell N. Chase, David R. Hunt, Horace P. Purcell). All appear to the Court to have been justified and lawful because practically all of these defendants were clearly guilty of law violations. The fact that the trial judges hearing these cases withheld punishment for reasons satisfactory to them, has no bearing on the lawfulness of the arrests because arresting officers are not charged with the duty of judging the merits of a case. Other arrests have been made by the highway patrol in the area and the defendants have been convicted.

14. The defendant has not threatened plaintiffs nor those they represent with deprivation of any civil rights; nor has he unlawfully limited freedom of speech of the plaintiffs or those they represent; nor has he denied plaintiffs and those they represent lawful access to the roads serving The Nashville Corporation plant, except as herein stated.

15. All persons arrested by the highway patrol under the charge of defendant Bomar have been promptly taken before committing magistrates and had their cases tried in normal course.

16. Some highway patrolmen have been armed with submachine guns while on duty at the strike scene (mainly on November 11 and December 15) at times when they were dealing with and in the presence of strikers, pickets, and strike sympathizers in large numbers.

### Conclusions of Law.

1. The Court has jurisdiction over the parties and the subject matter of this suit.

2. The arrest of Weston and the stopping and searching of the Campbell car are the only two instances in the record that could be cited to be evidence of any violation of the civil rights of petitioners and those they represent. These two instances

are isolated and not typical of the work of the highway patrol during this strike.

The arrest of Weston was probably unwarranted but is excusable under the stress of circumstances prevailing at the time and place of the arrest.

3. Weston was acting within his constitutional right of freedom of speech in making the statement he made just prior to his arrest.

4. The other arrests described in the bill of complaint are of no consequence in this proceeding.

5. Plaintiffs and those they represent have not conducted an entirely peaceful and lawful strike, nor have they been solely engaged in what is termed "peaceful picketing."

6. There is no doubt but that if highway patrolmen and other law enforcement officers had not been on duty in the vicinity of this strike as they have been, there would have been serious breaches of the peace arising out of the strike situation. It is entirely probable that numbers of persons would have been hurt and some killed.

It is fortunate that no one has been seriously hurt or killed so far, and the Court is satisfied that more acts of violence would have taken place in connection with the strike had the highway patrol not been present and on duty.

7. The requirement of defendant Bomar that the pickets and strikers stand on only one side of the roads serving the plant, with choice of which side to the strikers, is not an unreasonable exercise of police power and is not further material in this suit. There appears no likelihood of restriction of the pickets' right to choose the side of the road on which they prefer to gather.

8. The strikers may rightfully ask drivers of cars to stop on the highways for the purpose of transmitting information or literature to them; but neither strikers nor any one else has the arbitrary right to stand out in a highway and block it and force automobiles to stop regardless of who may be in them and regardless of whether the occupants wish to be stopped or not.

9. Defendant Bomar and the highway patrol are clearly acting lawfully in keeping the highways open for the free passage of vehicles to and from the Nashville Corporation plant.

10. The highway patrolmen are lawfully armed when equipped with submachine guns at times when they are confronted with the duty of dealing with such large crowds as shown in the evidence in this case.

11. The evidence does not show that defendant Bomar has any intent to interfere with or deprive petitioners or those they represent of any civil rights; nor that he has conspired with any one to penalize the plaintiffs or their associates, nor that he has denied plaintiffs or those they represent, any rights, privileges, or immunities guaranteed by the Constitution except as hereinbefore mentioned.

12. The temporary injunction prayed in the bill of complaint should be denied at this time as the evidence so far introduced has not shown sufficient cause to justify this Court to exercise extraordinary injunctive powers which would only hamper lawfully constituted executive officials engaged in the preservation of peace and good order and in the administration of their other law enforcement duties. However, since the strike in continuing, plaintiffs may renew their motion and introduce additional evidence, should future circumstances warrant such action.

Judgment accordingly.